IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BOARD OF COMMISSIONERS OF | § | CASE NO: 08CV2505RCC |
| THE PORT OF NEW ORLEANS, | § | JUDGE JOHN W. DARRAH |
| | § | MAGISTRATE MICHAEL T. MASON |
| Plaintiff, | § | |
| | § | RELATED TO |
| v. | § | |
| | § | CIVIL ACTION NO. 06-8101 |
| LEXINGTON INSURANCE | § | EASTERN DISTRICT OF LOUISIANA |
| COMPANY, AND FACTORY | § | JUDGE DONALD E. WALTER |
| MUTUAL INSURANCE COMPANY | § | MAGISTRATE ALMA L. CHASEZ |
| | § | |
| Defendants | § | |

**BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS'
MEMORANDUM IN OPPOSITION TO
BUILDING CONSULTING ASSOCIATES, INC.
<u>MOTION TO QUASH NON-PARTY SUBPOENA</u>**

      **COMES NOW** the Board of Commissioners of the Port of New Orleans (the "Port"), Plaintiff in the underlying action filed in the United States District Court, Eastern District of Louisiana, Civil Action No. 06-8101, through undersigned counsel, and responds in opposition to the Motion to Quash a Subpoena filed in this Court by Building Consulting Associates, Inc. (hereinafter "BCA"). In support of its position, the Port shows to the Court the following.

**I.**    <u>**Background**</u>

      The Port is a public entity of the State of Louisiana. *See* La. Rev. Stat. Ann. 34:1, *et seq.* On August 29, 2005, Hurricane Katrina caused significant damage and destruction to the New Orleans area, including damage to the twenty-two miles of property located along the Mississippi River that is owned by the Port. The underlying dispute between Factory Mutual Insurance Company (hereinafter "FMIC") and the Port arises out of the Port's claim for insurance coverage

proceeds pursuant to an "All Risk" primary commercial property insurance policy issued to the Port by FMIC. The Port made a claim with FMIC for its insured losses, but FMIC has not adequately compensated the Port for its damages sustained from Hurricane Katrina.[1] The insurance proceeds to which the Port is entitled are critical to the Port's revitalization and to the economic revitalization of the City of New Orleans.

FMIC has been the primary insurer of the Port and its property for over twenty years. The policy at issue in the underlying lawsuit was an "All Risk" primary commercial insurance policy for the time period of July 1, 2005 to July 1, 2006 that insured the Port's property against wind and flood damage. FMIC's liability under this policy began after $20 Million in insured losses, and included a maximum coverage limit of $500 Million. The Port, in addition to its claim for damages under this policy, also has a significant claim against FMIC for its bad faith claims practices, including arbitrary and capricious delay in payment of insurance benefits and undervaluing the Port's damages and losses.[2] For example, despite satisfactory proofs of loss submitted to it by the Port, FMIC failed to make *any* payment of proceeds to the Port until February 2007.[3]

To this date, FMIC has paid the Port approximately $20 Million, which represents only a small portion of its claim for insurance coverage. As of the most recent submission of its claim, the Port's losses are estimated to be in excess of $200 Million. Given the Port's claims that FMIC has delayed in payment and undervalued the Port's claim, the documents of consultants

---

[1] *See generally* the Amending, Supplemental and Superseding Complaint for Damages and Request for Jury Trial filed by the Port, Docket Entry No. 31, Case No. 2:06-cv-8101, in the underlying case in the United States District Court for the Eastern District of Louisiana (hereinafter the "Amended Complaint"). Due to the size of this document (35 pages), concerns regarding overloading email of counsel and the short deadline for response to BCA's motion, the Port references the Amended Complaint filed through the PACER system.
[2] See La.Rev.Stat. §§22:658 and 22:1220.
[3] See n. 1.

used by FMIC to estimate the Port's damages from Hurricane Katrina are critical to the Port's claims for damages and for its claims for bad faith.

On April 18, 2008, the Port issued a subpoena from this Court to BCA. BCA was served on April 24, 2008. (*See* Exh. "A"-Subpoena and Return of Subpoena.)

The Port had subpoenas issued to fourteen of FMIC's consultants. These subpoenas were similar in format and in the form of production requested of the consultants to subpoenas that FMIC has had issued to the Port's consultants and contractors. (*See, e.g.,* Exh. "B"-FMIC's subpoena to the Port's consultant River Consulting.)

All of FMIC's consultants retained the same Fort Worth, Texas law firm of Brown, Dean, Wiseman, Proctor, Hart & Howell, L.L.P. to represent them in objecting to the subpoenas issued to them by the Port. The Port was not informed of any issues with the subpoenas until they received the letter of Charles B. Mitchell, Jr., Esq. of that firm on April 29, 2008. (*See* Exh. "C"-Mitchell Letter.) On April 30, Mr. Mitchell made one five minute call to Susan G. Guidry, counsel for the Port, at which time Ms. Guidry stated a willingness to amicably resolve the issues, including giving an extension of time, and informed Mr. Mitchell that she was preparing a letter to him. (*See* Exh. "D"-Aff. Of Susan Guidry and Exh. "E"-May 1 letter to C. Mitchell.) Nevertheless, within hours of the conversation, Mr. Mitchell was filing motions to quash in courts around the country on behalf of the consultants. Since Ms. Guidry sent the letter of May 1 addressing the issues, the Port has not heard again from Mr. Mitchell, and has not heard from anyone else on behalf of the consultants or FMIC in any attempt to amicably resolve the issues.

## II.    <u>Argument</u>

   A.    *BCA has not previously produced in response to the subpoena.*

On April 16, 2008, FMIC produced to the Port data discs that contained some documents prepared by BCA for FMIC.[4]  These discs were accompanied by a cover letter that stated only the name of the disc and its file numbering.  (*See* Exh. "F"-Cover letter from FMIC.)  The letter did not indicate the extent or completeness of the documents produced, nor has FMIC clarified what it has or has not produced.

However, the data produced by FMIC could not have been produced in response to the subpoena issued to BCA, as the subpoena was not issued until April 18, 2008, and was not served on BCA until April 24, 2008. (*See* Exh. "A"- Subpoena and Return of Subpoena and Exh. "F"- Cover letter from FMIC.)  FMIC could not in any case verify that BCA had turned over all documents responsive to the subpoena to FMIC.  Moreover, although BCA argues in its memorandum that it produced its "entire file …that related to this litigation" (memo. at 2) to FMIC, it cannot argue that it produced all documents and data responsive to the subpoena.[5]

Furthermore, the Port has a right to subpoena the entity that created these documents, BCA, regardless of whether FMIC has produced some of its documents.  *See* Fed. R. Civ. P. 34(c).  *See also* Fed. R. Civ. P. 45.  BCA cannot use a partial production by FMIC to shield it from the subpoena power of the Court and from verifying that its production is complete.  The subpoena issued to BCA requires production of documents that the Port has not yet received and which are critical to the Port's claim against FMIC.  It is also critical that BCA be held accountable for making a complete production of responsive documents.

B.     *The subpoena was served on BCA in compliance with Fed. R. Civ. P. 45(b)(1).*

---

[4] FMIC produced data discs for most of its consultants on the eve of the Port's issuance of the subpoenas to them.
[5] *See, e.g.*, subpoena request no. 1, seeking BCA's document retention and destruction policies, and no. 12, seeking certain past contracts between BCA and FMIC.

BCA incorrectly argues that the subpoena was served on it by DHL courier service. This assertion is meritless and frivolous. BCA has not produced any evidence to verify this claim. The only exhibit attached by BCA to its Motion to Quash is the subpoena served on it by the Port.

As a courtesy to BCA, the Port sent an overnight copy of the subpoena to its offices by way of DHL courier service. (*See* Exh. "G "-Courtesy letter to BCA.) The courtesy letter stated that the subpoena would be served on BCA. The Port, employing the services of Impact Investigations, Inc., professional process servers located at 1200 Harger Road, Suite 500, Oak Brook, Illinois, served the official subpoena on BCA on April 24, 2008. (*See* Exh. "A"- Subpoena and Return of Subpoena.) The official subpoena was served on BCA by George Pierce, a process server over the age of eighteen and a person uninterested in this litigation. (*See* Exh. "A"- Subpoena and Return of Subpoena.) Thus, the subpoena at issue was served on BCA in compliance with Fed. R. Civ. P. 45(b)(1).

BCA also argues without support that the subpoena was served on Stanley J. Nieminski, and that Mr. Nieminski is not an agent, employee or representative of BCA. However, the Illinois Secretary of State Corporations File Detail Report for BCA reflects that Mr. Nieminski is the registered agent for BCA. (See Exh, "H"- Corporation File Detail Report.) Thus, the Port has served the subpoena on an agent of BCA and has complied with Fed. R. Civ. P. 45(b).

C.    *The subpoena allows a reasonable time for compliance.*

The subpoena served on BCA by the Port allows it a reasonable time for compliance. Movant cites the case *Kupritz v. Savannah College of Art & Design,* 155 F.R.D. 84, 88 (E.D. Pa. 1994) as its authority that the subpoena issued to it does not provide a reasonable time for

compliance. The *Kupritz* case, however, lends no support to this assertion. That case provides no explanation of what is a reasonable time for compliance. *Kupritz*, 155 F.R.D. at 88. Furthermore, the notice for the deposition at 1:30 P.M. in that case was defective because the subpoena was served on the deponent at 1:45 P.M., fifteen minutes after the deposition was supposed to start. *Id.* The subpoena at issue here is not comparable to the subpoena in that case.

The Port made the return date for compliance with the subpoena to be thirty days from issuance of the subpoena. (*See* Exh. "A"- Subpoena and Return of Subpoena.) This complies with the time for production of a party's documents under Fed. R. Civ. P. 34. The subpoena consists of a narrowly tailored request for documents from BCA. The majority of the documents requested are those that BCA generated as a damages consultant to FMIC on the Port's Hurricane Katrina coverage claim. Considering that BCA was assigned a specific task by FMIC, it should be familiar with exactly where the documents are located and which files to produce. It is reasonable to assume that a company like BCA would keep its files in relatively organized and accessible filing system that would allow efficient and quick retrieval of documents. It should be able to produce its documents within less than thirty days, considering the foregoing. However, if BCA had attempted to discuss its concerns about time constraints with the Port, it would have realized that the Port would have certainly agreed to grant it a reasonable extension of time for compliance, relative to its needs. (*See* Exh. "E"-May 1 letter to C. Mitchell p. 2 Response to Objection No. 3.)

       D.    *The subpoena does not subject BCA to an undue burden.*

BCA's assertion that the subpoena poses an undue burden is meritless and frivolous. In support of its claim of undue burden, BCA cites *Linder v. Nat'l Sec. Agency,* 94 F.3d 693, 695

(D.C. Cir. 1996).  However, it fails to identify how this case supports its claim of undue burden. This case examines undue burden in the context of a volume of requested documents that were privileged.  *Linder,* 94 F.3d at 695.  BCA has made no objection to the subpoena on the basis of privilege.  BCA also cites *Wiwa v. Royal Dutch Pet. Co.*, 392 F.3d 812, 818 (5th Cir. 2004) in the context of undue burden.  However, it fails to indicate how this case supports its contention of undue burden.

The burden is on the moving party to demonstrate how a subpoena is oppressive.  *Linder v. Dept. of Def.*, 133 F.3d 17, 24 (D.C. CA 1998).  This burden is a difficult one to meet. *Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 394, 403 (D.C. CA 1984).  BCA has not produced any evidence or exhibits to verify this claim.  The only exhibit attached to its Motion to Quash is the subpoena served on it by the Port.  Therefore, its argument of undue burden should fail as unsupported.

The subpoena served on BCA by the Port does not subject it to an undue burden.  As is explained in the affidavit of Dwight Duke Alden, an e-discovery consultant for the Port, the Port does not request that BCA hand notate any fielded information for electronic documents.  (*See* Exh. "I"-Aff. Of D. Duke Alden.)  All metadata related to the electronically stored documents requested by the Port can be easily captured in a fully automated manner in a matter of minutes using any number of relatively inexpensive and commonly available tools.  Like the electronic files, most of the fielded information requested for scanned paper documents can be derived from a fully automated process.  The Port has requested that BCA make accommodations during the scanning process for the entry of two basic bibliographic fields when they exist - "Box Number" and "Folder Tab Label."  Nearly all modern scanning tools permit these fields to be

entered only once by the scanning technician for multiple documents contained in the same box or folder.  *Id.*

In compliance with Fed. R. Civ. P. 45(a)(1)(A)(iii), the Port requested that BCA produce its documents to IKON Office Solutions (hereinafter "IKON"), which is located within 100 miles of its offices.  Subsequent to serving the subpoena on BCA, the Port began making arrangements with IKON for its professionals to personally pick up the documents at BCA's office, process the documents for production at the IKON facility, and return the documents to BCA.  The pick up and return of the documents would be provided by IKON to BCA free of charge.

If counsel for FMIC or BCA would have attempted to amicably resolve its concerns about any undue burden, the Port would have made clear its efforts to simplify the process for BCA.  Furthermore, the Port is willing to agree to pay BCA's costs of production that would be incurred for use of IKON's services.  The only action required of BCA is to produce to IKON its subpoenaed electronic documents in native format, and its paper documents as they are.  Thus, given the Port's willingness to work with BCA regarding production, the subpoena does not subject it to an undue burden.[6]

Although BCA is a not a party to the underlying action, it is not isolated from the dispute between the Port and FMIC.  FMIC retained BCA to make a particular assessment of the Port's damages sustained from Hurricane Katrina.  It has been to the Port's damaged property and has made assessments regarding its damages.  Importantly, BCA has gathered information and reached conclusions about the Port's damages and has prepared reports at FMIC's instruction.  In order for the Port to fully develop its claim for indemnity against FMIC, it must determine the

---

[6] Susan G. Guidry, counsel for the Port, informed counsel for the consultants of this on May 1, 2008.  (See attached EXHIBIT "E"-MAY 1 LETTER at p. 2, Response to Objection No. 2.

merit of BCA's conclusions and reports based on its complete file in relation to the Port's Hurricane Katrina damages. The only way to verify that the Port has BCA's complete file is to request its documents directly from the source of those documents.

Given the importance of the amount in controversy in the underlying action, it is especially essential that the Port get verifiable, complete production of BCA's documents relating to the Port's Hurricane Katrina damages. The Port must be compensated adequately by FMIC in order to completely rebuild and revitalize its industry. BCA's documents are of core importance to the Port's claim that FMIC has arbitrarily and capriciously undervalued its damages. In comparison to the Port's need for these documents, the burden imposed on BCA is very small, especially considering the narrowly tailored scope of the document requests and Port's intentions regarding production and costs. Thus, the subpoena does not impose an undue burden on BCA.

    E.    *The subpoena demands only the documents that are reasonably accessible to BCA.*

BCA has not produced any evidence, as required by Fed. R. Civ. P. 45(d)(1)(D), that any information requested is inaccessible because of undue burden or cost. Accordingly, BCA's assertion that the subpoena requests documents that are not reasonably accessible is meritless and unsupported.

In Auto Club Family Ins. Co. v. Ahner, No. 05-5723, 2007 WL 2480322, at *3 (E.D. La. Aug. 29, 2007), the court explains that the non-party "must make an evidentiary showing that the data sought is not reasonably accessible because of undue burden or cost." The court further states that the "statement of a lawyer in a memorandum that the electronic information is not readily accessible or that that it would be unduly burdensome to comply with the request is not evidence." Id. The court went on to deny the non-party's motion to quash and for protective

order because the non-party "offered no evidence of any kind sufficient to satisfy" its burden of proof under Rule 45. *Accord*, Mikron Industries, Inc. v. Hurd Windows & Doors, Inc., No.C07-532RSL, 2008 WL 1805727 (W.D. Wash. Apr. 21, 2008).

BCA's advertisements and brochures are relevant to the Port's claims against FMIC. Relevance of requested documents is determined based on whether the documents are relevant to the claim or defense of a party to the underlying action and reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). *See also Gonzales v. Google, Inc.,* 234 F.R.D. 674, 679 (N.D. CA 2006). BCA's ads and brochures will give insight to the Port and the jury as to why FMIC retained BCA based on how it represents it services. BCA's advertisements can be used by the Port to show the nature of and any biases in the business relationship between BCA and FMIC based upon how BCA advertises itself to the insurance industry. Thus, BCA's advertisements and brochures are relevant, key documents that the Port will need to determine the accuracy and integrity of reports prepared by BCA for FMIC that pertain to the Port's claim for Hurricane Katrina damages.

Also, BCA has cited no authority to support its claim that its advertisements and brochures, as requested by the subpoena, are considered trade secrets and/or confidential information. The Port in its subpoena requests that it produce the advertisements and brochures concerning the services it provides that it makes available to the public and that it provides to its potential and current customers. The most important element of confidential information and trade secrets is that the holder of such information or secrets keep it secret. *See generally U.S. Gypsum Co. v. LaFarge North America, Inc.,* 508 F.Supp. 2d 601 (N.D. IL 2007). *See also Verizon Comm., Inc. v. Pizzirani,* 462 F.Supp. 2d 648 (E.D. PA 2006). The fact that BCA

voluntarily produces and makes available these materials is prima facie evidence that it does not consider the advertisements and brochures requested by the subpoena to be confidential information or trade secrets.  These types of documents do not ordinarily contain information considered confidential or trade secrets.  Thus, the subpoena only requests documents that are clearly permitted by Fed. R. Civ. P. 45(c)(3)(B)(i).

## III.   <u>Conclusion</u>

In conclusion, BCA's Motion to Quash should be denied.  The subpoena issued and served on it by the Port complies with Fed. R. Civ. P. 45 in all respects.  It was served properly, and it allows BCA a reasonable time for compliance.  Standing alone, the subpoena does not impose an undue burden on BCA.  However, considering the Port's willingness to aid BCA in complying with the subpoena, the entire process will impose only a minimal burden on it.  The Port's absolute need to ensure it has all of BCA's critical documents greatly outweighs any burden that BCA may incur in the process of compliance.  Also, the Port has only requested that BCA produce documents that are reasonably accessible.

For the foregoing reasons, the Port respectfully requests that BCA's Motion to Quash the subpoena be denied.

Respectfully Submitted,


   **/s/** Mark D. DeBofsky
Mark D. DeBofsky (IL Bar # 03127892)
Daley, DeBofsky & Bryant
55 West Monroe Street, Suite 2440
Chicago, IL  60603
Telephone: 312-372-5200
Facsimile: 312-372-2778
Fax: 312-372-2778

mdebofsky@ddbchicago.com

and

William W. Hall, LA Bar #6449
William W. Hall & Associates
3500 N. Hullen Street
Metairie, LA 70002
Office:  504-388-9056
Cell:  504-388-9056
wmwhall@bellsouth.net

Susan G. Guidry (#17679)
  Of Counsel
William W. Hall & Associates
Post Office Box 60046
1350 Port of New Orleans Place
New Orleans, Louisiana  70160
Telephone: (504) 528-3232
guidrys@portno.com
sgguidry@cox.net

William F. Merlin, Jr. (FL Bar No. 364721)
Merlin Law Group, P.A.
777 S. Harbour Island Blvd.
Suite 950
Tampa, Florida 33602
Office: 813-229-1000
Fax: 813-229-3692
wmerlin@merlinlawgroup.com

Deborah R. Trotter (LA Bar# 29459)
Merlin Law Group, P.A.
718 Dunbar Ave., Suite 1A
Bay St. Louis, MS 39520
Telephone (228) 469-9040
Fax (228) 469-9039
Email dtrotter@merlinlawgroup.com

Brien O. Gussoni, Jr. (#1392)
Francine Weaker (#18520)
Jeffrey M. Lynch (#18313)
Joseph W. Fritz, Jr. (# 5755)

Board of Commissioners of Port of New
Orleans
1350 Port of New Orleans
New Orleans, LA 70130
P.O. Box 60046
New Orleans, LA 70160
gussonib@portno.com
weakerf@portno.com
lynchj@portno.com
fritzj@portno.com
504-528-3228
504-528-3209 fax

**ATTORNEYS FOR PLAINTIFFS,**
**Board of Commissioners of the Port of**
**New Orleans**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 9th day of May, 2008, served a copy of the foregoing

pleading on all counsel for all parties by electronic mail, including:


    __/s/ Mark D. DeBofsky_____
    Mark D. DeBofsky (IL Bar # 03127892)

Charles B. Mitchell, Jr.                          Via Electronic Mail
cmitchell@browndean.com
Brooke A. Ulrickson
bau@browndean.com

H. Jerome Gette                                   Via Electronic Mail
R. Tate Gorman
Thomas H. Cook, Jr.
Shannon M. O'Malley
James W. Holbrook, III
Zelle, Hofmann, Voelbel,
   Mason & Gette, L.L.P.
1201 Main Street, Suite 3000
Dallas, TX  75202
jgette@zelle.com
tgorman@zelle.com

13

tcook@zelle.com
somalley@zelle.com
jholbrook@zelle.com

Joseph P. Guichet                                    Via Electronic Mail
Ralph S. Hubbard
Rachel Ann Meese
Lugenbuhl, Wheaton, Peck Rankin &
  Hubbard
jguichet@lawla.com
rhubbard@lawla.com
rmeese@lawla.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS, | § § § | CASE NO: 08CV2505RCC JUDGE JOHN W. DARRAH MAGISTRATE MICHAEL T. MASON |
| Plaintiff, | § § | |
| | § | RELATED TO |
| v. | § § | CIVIL ACTION NO. 06-8101 |
| LEXINGTON INSURANCE COMPANY, AND FACTORY MUTUAL INSURANCE COMPANY | § § § § | EASTERN DISTRICT OF LOUISIANA JUDGE DONALD E. WALTER MAGISTRATE ALMA L. CHASEZ |
| Defendants | § § | |

**LIST OF EXHIBITS TO TO BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS' MEMORANDUM IN OPPOSITION TO BUILDING CONSULTING ASSOCIATES, INC. MOTION TO QUASH NON-PARTY SUBPOENA**

| Exh.No. | Document |
|---|---|
| A | Subpoena to Hagen, Streiff, Newton, Oshiro, Assountants, PC c/o Peter Hagen and Exhibit A to Subpoena |
| B | Subpoena to River Consulting, L.L.C. c/o CT Corporation System and Exhibit A to Subpoena |
| C | Building Consulting Associates, Inc.; Chelsea Place Design, Inc. d/b/a Chealsea Architects or Chelsea Design Investigations; Construction Analysis, Inc.; Crenshaw Consulting Group, LP; Engineering, Design & Testing Corp.; Fisk Electric Company; Gilbane CAT Response; Hagen, Streiff, Newton & Oshiro; McDonald-Mehta Engineers, LLP; Solis Parker & Assoc.; Suncorp Valuations, Inc.; United Salvage; Urban Engineers, Inc.; and Robert L. Wright & Associates, Inc.'s Objections to Subpoena Duces Tecum |
| D | Affidavit of Susan G. Guidry |
| E | Letter dated May 1, 2008 to Charles B. Mitchell, Jr. |

| F | Letter dated March 28, 2008 to Susan G. Guidry of Port of New Orleans |
| G | Letter dated April 11, 2008 to Mr. Daniel Williams of Hagen, Streiff, Newton & Oshior, Accountants, PC |
| H | BCA Corporation  File Detail Report |
| I | Affiavit of Dwight Duke Alden |

EXHIBIT "A"

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

<u>NORTHERN</u>      DISTRICT OF      <u>ILLINOIS</u>

Board of Commissioners of the Port of New Orleans
V.
Lexington Insurance Company,
And Factory Mutual Insurance Company,

### SUBPOENA IN A CIVIL CASE

Case Number:[1]   06-8101, Judge Donald E. Walter
Pending in the United States District Court for the Eastern District of Louisiana

TO:   **Building Consulting Associates, Inc.**
c/o Stanley J. Nieminski
6756 N. Harlem Ave.
Chicago, IL 60631

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attached Exhibits "A" and "B"

| PLACE | DATE AND TIME |
| --- | --- |
| IKON Office Solutions<br>125 South Wacker Dr., Level B<br>Chicago, IL 60606 | May 19th, 2008    9:00 AM |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| *[signature]*     ATTORNEY FOR PLAINTIFF | April 18th, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Susan G. Guidry, Of Counsel, William W. Hall & Associates
Post Office Box 60046, 1350 Port of New Orleans Place, New Orleans, LA 70160
Phone: 504.528.3232

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE April 24, 2008 | PLACE Nieminski & Associates, CPAs 10 Executive Court, Suite 2 South Barrington, IL - 60010 |
|---|---|---|
| 06 - 8101 SERVED | | |

| SERVED ON (PRINT NAME) Stanley J. Nieminski | MANNER OF SERVICE Corporate Building Consulting Associates, Inc c/o Stanley J. Nieminski |
|---|---|
| SERVED BY (PRINT NAME) George Pierce | TITLE Private Detective 115-001381 |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _April 24, 2008_
DATE

_signature_
SIGNATURE OF SERVER

_1200 Harger Road, Ste.500_
ADDRESS OF SERVER

_Oak Brook, IL 60523_

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT "A" TO DOCUMENT SUBPOENA
## TO BUILDING CONSULTING ASSOCIATES, INC.

## DEFINITIONS

As used in the following request for production, the terms listed below shall have the following meaning:

1.  The term "**plaintiff**" or "**Port**" shall mean the Board of Commissioners of the Port of New Orleans and its employees, agents, affiliated entities, successors, predecessors, partners and any other persons or entities acting or purporting to act on its behalf.

2.  The terms "**you**," or "**your**," shall mean Building Consulting Associates, Inc. and its employees, agents, affiliated entities, successors, predecessors, partners and any other persons or entities acting or purporting to act on its behalf.

3.  The term "**defendant**," or "**FMIC**," shall mean and refer to Factory Mutual Insurance Company and its employees, agents, affiliated entities, successors, predecessors, partners and any other persons or entities acting or purporting to act on its behalf.

4.  The term "**person**" shall mean any natural person or persons, or any entity, including without limitation, any corporation, organization or association.

5.  The term "**document**" or "**documents**" is used in its broadest sense and includes, without limitation, drafts, and documents whether printed, recorded, stored or reproduced by any mechanical or electronic process, or written or produced by hand, and including computer tapes (including backup tapes) and all other computer-related documents, within Building Consulting Associates, Inc.'s possession, custody or control. "Documents" shall also include (1) each copy that is not identical to the original or to any other copy, and (2) any tangible thing that is called for by or identified in response to any request. "Document" as used herein shall be construed broadly to include all documents and things within the scope of Federal Rules of Civil Procedure, and refers to all writings or other graphic matter, as well as any other medium by which information is stored or recorded. It includes originals, drafts, copies and reproductions; and it includes, without limiting the generality of the foregoing, letters; memoranda; drafts; reports and/or summaries of investigations; police reports; accident reports; opinions or reports of consultants; diagrams; marginal comments appearing on any documents; accounts; telegrams; studies; lists of persons attending meetings or conferences; records or memoranda of telephone conversations and meetings; written statements; transcripts of recorded statements; recorded

Exhibit "A"

statements; records of personal conversations or interviews; calculations; computations; specifications; drawings; advertisements; circulars; trade letters; press releases; prints; recordings; positive or negative films, slides or photographs; magnetic, electronic or video tapes; computer tapes, cards or printouts; invoices and records of payment; graphs; journals; agendas; manuals; and all other things of like nature; and any and all containers, boxes or other receptacles or repositories housing or containing such "documents." **The term "document" or "documents" are specifically intended to include email and "Electronically Stored Information" as defined below.**

6. "**Electronically Stored Information**" shall include, but is not limited to, all email text files, including word processing documents, spreadsheets, graphical image format (gif) files, and all other graphical form images, data bases, calendar and scheduling information. If the requested information is kept in a computer or informational storage or retrieval system, the term also included such codes, programming instruction and other material as necessary to retrieve and understand the information.

7. The terms "**relate to**," or "**relating to**" are to be interpreted in their broadest sense to mean, without limitation, embodying, mentioning, or concerning, directly or indirectly, the subject matter identified in the request.

8. The terms "**and**," and "**or**" shall be read conjunctively or disconjunctively, as required, to encompass the broadest amount of information and material.

9. The term "**native**" shall mean Electronically Stored Information in the electronic format of the application in which Electronically Stored Information is normally created, viewed and/or modified. Native files are a subset of electronically stored information.

## INSTRUCTIONS

The following instructions apply to your production of documents in response to the subpoena:

1. Please produce all documents that are in your possession, custody or control.

2. This request for production of documents shall be deemed continuing so as to require further and supplemental production in the event that the party requested to produce, or any of its attorneys, agents or representatives, obtains or discovers additional information or documents between the time of the initial production and the time of hearing or trial that are responsive to the requests.

Exhibit "A"

3. If any documents covered by this request for production of documents are withheld by reason of a claim of privilege, work product immunity or other ground of non-production, a privilege log is to be furnished at the time that documents are produced identifying each such documents for which the privilege is claimed specifically by its nature (*e.g.*, letter, memorandum, etc.) together with the following information with respect to any such documents withheld: author; recipient; sender; indicated or blind copies; date; subject matter; basis on which the privilege is claimed; number of pages; and the paragraph of this request for production of documents to which such document relates.

4. In the event that any document called for by this request for production of documents has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author; recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

5. The "form" of production should be pursuant to Fed. R. Civ. P. 45, as requested by the Port's counsel in the document labeled as Exhibit "B" attached hereto.

6. If there is any question as to the meaning of any part of these requests for production of documents, please promptly contact the Port's counsel for an explanation.

## DOCUMENTS TO BE PRODUCED

Pursuant to Rule 45 (a)(1)(D), please produce all documents requested below in the form of production as defined in the attached Exhibit "B."

1. A copy of your document retention and destruction policies in effect from August 1, 2005, to the present date, including any amendment or revisions thereto, and including any policies related to retention and preservation of electronically stored information.

2. All correspondence, including emails, between you and FMIC relating in any way to the Port or the Port's insurance claims arising from or resulting from Hurricane Katrina.

3. All correspondence, including emails, between you and the Port.

4. All correspondence, including emails, between you and any other person relating in any way to the Port or the Port's insurance claims arising from or resulting from Hurricane Katrina.

Exhibit "A"

5.    All correspondence, including emails and inter-office communications, between or among your agents, representatives, employees, predecessors, successors and any person acting or purporting to act on your behalf relating in any way to the Port or the Port's claims arising out of or resulting from Hurricane Katrina.

6.    All photographs, videos, sketches, drawings, and other graphic representations, audio tapes, and all photographic, videotape and audiotape logs relating in any way to the Port or the Port's insurance claims arising from or resulting from Hurricane Katrina.

7.    All reports, including draft reports, preliminary reports and final reports, of any nature, including without limitation, financial reports, estimates, evaluations, spreadsheets, analyses, appraisals, (whether in electronic form or written form), provided to you at any time relating in any way to the Port or the Port's insurance claims arising from or resulting from Hurricane Katrina.

8.    All reports, including draft reports, preliminary reports and final reports, of any nature, including without limitation, financial reports, estimates, evaluations, spreadsheets, analyses, appraisals, (whether in electronic form or written form), provided by you at any time to FMIC relating in any way to the Port or the Port's insurance claims arising from or resulting from Hurricane Katrina.

9.    All reports, including draft reports, preliminary reports and final reports, of any nature, including without limitation, financial reports, estimates, evaluations, spreadsheets, loss valuation, appraisals, (whether in electronic form or written form), provided by you at any time to any other person relating in any way to the Port or the Port's insurance claims arising from or resulting from Hurricane Katrina.

10.    All documents, including without limitation, agendas, minutes, and notes of meetings, that relate to any discussions and meetings between or among your agents, representatives, employees, predecessors, successors and any person acting or purporting to act on your behalf relating in any way to the Port or the Port's insurance claims arising out of or resulting from Hurricane Katrina.

11.    All documents, including without limitation, agendas, minutes, and notes of meetings, that relate to any discussions and meetings between you and FMIC relating in any way to the Port or the Port's insurance claims arising out of or resulting from Hurricane Katrina.

Exhibit "A"

12. All documents, including without limitation, agendas, minutes, and notes of meetings, that relate to any discussions and meetings between you and any other person relating in any way to the Port or the Port's insurance claims arising out of or resulting from Hurricane Katrina.

13. The entire files of any employee of yours relating to the Port or the Port's insurance claims arising out of or resulting from Hurricane Katrina.

14. All contracts between you and FMIC from January 1, 2003 to the present.

15. All documents, including without limitation, notes, reports, correspondence, invoices, memoranda, computer generated data, schedules, working papers, audio tapes, photographs, videotapes, guidelines, formulas and calculations, that were furnished to you, reviewed by you, and/or used by you in formulating and/or rendering any and all opinions, findings and/or analyses relating to the Port or the Port's insurance claim arising out of or resulting from Hurricane Katrina.

16. All documents, including without limitation, notes, reports, correspondence, invoices, memoranda, computer generated data, schedules, working papers, audio tapes, photographs, videotapes, guidelines, formulas and calculations, prepared by you in formulating and/or rendering any and all opinions, findings and/or analyses prepared by you in formulating any or all opinions relating to the Port or the Port's insurance claim arising out of or resulting from Hurricane Katrina.

17. All documents, including without limitation, advertisements and brochures that you provide to clients or potential clients that describe the types of services that you provide or provided at any time between August 1, 2005 and the present.

18. All invoices and/or billing statements, and all correspondence regarding same, presented to FMIC or any other person for services you rendered relating to the Port or the Port's insurance claim arising out of or resulting from Hurricane Katrina.

Exhibit "A"

<u>EXHIBIT "B"</u>

# Port of New Orleans Form of Production for Subpoena Responses:

## 1. Document Types
For the purposes of this request, the documents will be grouped into the following categories:

1) **Email:** Messages created using Microsoft Exchange, Outlook, Outlook Express, Lotus Notes, GroupWise, or other electronic mail system. Examples of file extensions related to email include: PST, MSG, EML, EDB, and NSF.
2) **Email Attachments:** Native files sent as part of an email message unit. There are numerous file extensions possible for email attachments, but common extension include DOC, XLS, PDF, PPT, JPG, BMP, WPD.
3) **E-Docs:** Native files found on storage devices such as computer hard drives, portable hard drives, portable flash memory devices ("thumb drives"), CDs, DVDs, shared servers, and document management systems.
4) **Scanned Hard Copy Docs:** Hard copy (paper) documents scanned into a tagged image file format (TIFF).

## 2. Metadata Load File
A delimited load file containing the extracted metadata from the native files should be included with each production. The extracted metadata should represent the files' data as the files sit on the source drives. Any change to the metadata resulting from file transfers or file copying (e.g. created or modified dates) may be deemed to materially alter the usefulness of the produced data. To ensure that metadata is preserved, all data should be collected and produced using forensically sound methods.

The file must use standard Concordance delimiters and be in Concordance data file format (DAT). The same load file format should be used for all types of docs, regardless of whether or not all fields are populated (for example, e-docs will not contain "to/from" metadata as would an email message, so that field may be left blank but should nevertheless be included):

### Full List of Requested Fields:

| Field# | Field Name | Description |
|---|---|---|
| 1 | Custodian | Name of the owner or custodian of the document. |
| 2 | Volume | Volume number as found on production media (see Section 7) |
| 3 | BegDoc# | First production Bates number assigned to the document. This will be the field to which the TIFF images will be linked. |
| 4 | EndDoc# | Last production Bates number assigned to the document. |
| 5 | BegAttach | First production Bates number assigned to the email message unit.[1] |
| 6 | EndAttach | Last production Bates number assigned to the email message unit. |
| 7 | Filename | Original filename of native file. |
| 8 | SourceFile | Fully qualified original path including filename. This will be the field to which the native file will be linked. |
| 9 | DateCreated | Creation date of the native file. |
| 10 | TimeCreated | Creation time of the native file. |
| 11 | DateLastMod | Date the native file was last modified. |
| 12 | TimeLastMod | Time native file was last modified. |
| 13 | Subject | Subject field value extracted from metadata of native file. |
| 14 | Title | Title field value extracted from the metadata of the native file. |
| 15 | Comments | Comments field value pulled from the metadata of the native file. |
| 16 | Filesize | Size of native file, in bytes. |
| 17 | To | Main recipient(s) of the e-mail message. |
| 18 | From | Sender of the e-mail message. |
| 19 | CC | Recipient(s) of "Carbon Copies) of the e-mail message. |

| 20 | BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. |
|---|---|---|
| 21 | EMail_Subject | Subject of the e-mail message. |
| 22 | DateSent | Sent date of an e-mail message. |
| 23 | TimeSent | Time the e-mail message was sent. |
| 24 | DateRcvd | Received date of an e-mail message. |
| 25 | TimeRcvd | Time the e-mail message was received. |
| 26 | Attachmt | Populates parent records with BegDoc# of each attached record, separated by semi-colons. |
| 27 | Attach | Populates parent records with original filenames of all attached records, separated by semi-colons. |
| 28 | AttRange | Stores BegDoc# of parent record and EndDoc# of last attachment record, separated by a hyphen. Populated for all records in the family (parent and attachment(s)). |
| 29 | DocExt | File extension of native file. May show original extension or suggested extension, depending on state of "auto-assign ext." option in EDLoader. |
| 30 | EntryID | Unique identifier of e-mails in mail stores. |
| 31 | FileDescription | Description of native file type, as listed in file type database. |
| 32 | IntMsgID | Internet Message ID assigned to an e-mail message by the outgoing mail server. |
| 33 | MD5Hash | Unique identifier, similar to a "fingerprint". Uses 128-bit encryption. May be used for de-duping purposes. |
| 34 | PgCount | Number of pages in a document (image records). |
| 35 | SourceApp | Source application assigned to the native file, as specified in the file type database. This application will be used to print the file during the e-Print and TIFF Conversion batch processes. |
| 36 | BoxNum | Box number for any document (including paper) collected from a storage box, whether on-site or offsite. This number could be the number assigned by an offsite storage company (e.g. Iron Mountain) or a number assigned internally by the record keeper. |
| 37 | Folder_Tab_Label | Text contained on the tab or label of the file folder from which a hard copy document was collected. If multiple file labels are present, separated two dashes (--). |
| 38 | Text | Extracted text from email and e-doc files. OCRed text for hard copy documents. |

**Concordance Standard Delimiters:**

| | | |
|---|---|---|
| Comma | = | (020) |
| Quote | = | (254) |
| New Line | = | (174) |

(Hard return only for each new record)

## 3. Image Load File

An Opticon load file must accompany all production materials to enable us to load the documents into a review tool.

**The fields in the Opticon file will be:**
Image Key without the file extension, Volume, Path, Document Breaks, and Page Count. (A comma will separate all fields.) Please note that the "PREFIX" should be determined by the producing party.

**Sample .opt file format:**
```
PREFIX-00000001,PREFIX001,\001\PREFIX-00000001.tif,Y,,,2
PREFIX-00000002,PREFIX001,\001\PREFIX-00000002.tif,,,,
PREFIX-00000003,PREFIX001,\001\PREFIX-00000003.tif,Y,,,2
PREFIX-00000004,PREFIX001,\001\PREFIX-00000004.tif,,,,
PREFIX-00000005,PREFIX001,\001\PREFIX-00000005.tif,Y,,,1
```

## 4. Production Format by Document Type

**a. Email and Email Attachments:** All email messages should be produced as both TIFF images and in native file format (for example, MS Outlook emails should be produced as both TIFF and MSG files). The TIFF images should be created in a manner mirroring how those messages would appear if they were printed from the native email application (MS Outlook, Lotus Notes, Groupwise, etc):

**b. E-Docs:** All e-docs should be produced as both TIFF images and in native file format (for example, Excel files are both TIFF and XLS files):

**c. Scanned Hard Copy Documents:** All responsive hard copy documents should be produced as TIFF images with appropriate bibliographic coding applied to identify fields 36 and 37 in the metadata list outlined in Section 2.

## 5. TIFF Format

All TIFF images delivered pursuant to Section 4 should be delivered in the following format:

- 300 dpi resolution
- TIFF file format
- Group IV compression
- Single page format (not multi-page)
- Logical unitization (document-level breaks)

## 6. Production Document Numbering

All documents produced should be given a sequential production number (Bates Number). Documents produced as TIFF images should be assigned a production number per page. Documents produced in native format should be assigned a single production number per file.

a. Email, E-Docs, and Scanned Hard Copy Documents should be endorsed with the production numbers in the lower right-hand corner of each page in a manner at to not cover any of the original body of the document. The pages may also be endorsed in the lower left-hand corner with any special production marks such as "Confidential" that you may desire. The single-page TIFF files should be named with the production Bates number assigned to each document. For example, if the production number of a produced page is "PREFIX-00000001", the file name of the associated TIFF would be "PREFIX-00000001.tif"

b. For files being produced natively, the files should be renamed with their respective bates numbers. The original filename will show up in the DAT file or any load file that is created for production.

## 7. Production Delivery Format

All production materials should be sent on read-only optical disks (such as CD-ROMs or DVDs) or on portable hard drives:

- One Volume ID per piece of media. Volume IDs are increased incrementally for each additional piece of media. Documents must not have pages on two different pieces of media.
- All load files described in this document should be saved in a folder named "DATA".
- Images should be saved on the media in a folder named "IMAGES". Image sub-folders should be used and named starting at "001", increasing incrementally while maintaining the three number padding. There should be no more than 1,000 images per sub-folder. Documents should not have pages spanning more than one sub-folder.
- Native files should be saved in a folder named "NATIVE".

## 8. Follow-up for Additional Questions

If any questions arise from this document as you begin your data processing or production activities, we are available to discuss in a collaborative environment to clarify our request. Please submit all requests to discuss this document to: Susan Guidry at (504) 528-3232 or via email at GUIDRYS@portno.com.

---

[1] An "email message unit" is defined as all documents purposefully attached or linked electronically to each other. With native documents this generally only applies to email files where the email is the parent of the family and other documents are "attached" and denoted as the attachment range. Container files such as PST, NSF, ZIP, RAR files that contain multiple documents should NOT be treated as email family units

EXHIBIT "B"

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

BOARD OF COMMISSIONERS OF
THE PORT OF NEW ORLEANS

V.

LEXINGTON INSURANCE COMPANY,
And FACTORY MUTUAL INSURANCE COMPANY,

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER:[1] 06-08101

Section "K"(5)

Pending in the United States District Court for the
Eastern District of Louisiana

TO:    **RIVER CONSULTING, L.L.C.**
c/o CT Corporation System
5615 Corporate Blvd., Suite 400 B
Baton Rouge, LA 70808

☐ YOU ARE COMMANDED to appear in the United States district Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
**See Attached Exhibits "A" and "B"**

| PLACE | IKON Office Solutions<br>3038 S. Sherwood Forest Blvd., Suite C<br>Baton Rouge, LA 70816 | DATE AND TIME<br><br>April 14, 2008,<br>9:00 am |
|---|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _signature_    Attorney for Defendant | March 11, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER    R. Tate Gorman, Zelle, Hofmann, Voelbel, Mason & Gette, L.L.P.,
1201 Main Street, Suite 3000, Dallas, Texas 75202 (214) 742-3000.

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
                    DATE                              SIGNATURE OF SERVER

_____

_____

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party servicing the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT "A" TO DOCUMENT
## SUBPOENA TO RIVER CONSULTING, LLC

## DEFINITIONS

As used in the following Requests for Production, the terms listed below shall have the following meaning:

1.      "River," "You," or "Your," means and refers to River Consulting, LLC and its predecessors, successors, affiliated or related companies, agents, representatives, employees and all other persons acting in concert with it, or under its control, whether directly or indirectly.

2.      "Plaintiff" or "Port" means and refers to The Board of Commissioners of the Port of New Orleans and its employees, agents, affiliated entities, successors, predecessors, partners, and any person or entity acting or purporting to act on their behalf.

3.      "Defendant" or "FMIC" means and refers to Factory Mutual Insurance Company and its respective agents, representatives, employees, predecessors, successors and any person acting or purporting to act on its behalf.

4.      "Claim" means the claim by the Port for insurance coverage under Policy No. UV954 in connection with Hurricane Katrina.

5.      "Port property" means any property for which the Port is making claim under Policy No. UV954 for damage caused by Hurricane Katrina.

6.      "IBC 2000" refers to the 2000 edition of the International Building Code.

7.      "Building Official" refers to the person and/or entity authorized and directed to enforce the provisions of all applicable building codes from January 1, 1985 to present at the Port property, including, but not limited to, the IBC 2000.

8.      "Document" or "documents" are used in the broadest sense and include, but are not limited to, originals and non-identical copies of letters, drafts, correspondence, project work sheets, telegrams, memoranda, reports or records of telephone conversations, ledgers, journals, invoices, bills, financial and business records, receipts, contracts, reports, studies, calendar entries, diary entries, agendas, maps, notes, charts, forms, tabulations, analyses, statistical or informational accumulations, guidelines, instructions, handbooks, manuals, operating procedures, training manuals, graphs, and all other writings in your possession, custody, or control whose contents relate to the subject matter of the discovery request. The term includes communications not only in words, but photographs, sound records, film, and tapes. **The terms "document" or "documents" are specifically intended to include e-mail and "Electronically Stored Information" as defined below.**

9.      "Electronically Stored Information" shall include, but is not limited to, all e-mail, text files (including word processing documents), spreadsheets, graphical image format (gif) files, and all other graphical format images, data bases, calendar and scheduling information. If the requested information is kept in a computer or informational storage or retrieval system, the

term also includes such codes, programming instructions and other materials as necessary to retrieve and understand the information.

10.    "Native" means and refers to Electronically Stored Information in the electronic format of the application in which such Electronically Stored Information is normally created, viewed, and/or modified.  Native files are a subset of Electronically Stored Information.

11.    "Evidences" or "evidencing" means showing or tending to show, in any appropriate manner, the existence or nonexistence of a matter.

12.    "Relating to," "relates to," "referring to," or "refers to" mean, without limitation, embodying, mentioning, or concerning, directly or indirectly, the subject matter identified in the request.

13.    "Concerning" or "regarding" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, corresponding to, showing, describing, analyzing, reflecting and constituting.

## INSTRUCTIONS

The following instructions apply to each Request set forth herein:

1.    Please produce all documents that are in your possession, custody, or control or that are reasonably obtainable from other sources.

2.    If a document responsive to any Request is no longer in your possession, custody or control, state what disposition was made of the document and the date of such disposition, and identify all persons having knowledge of the document's contents.

3.    If any document responsive to any request has been destroyed, set forth the content of said document, the location of any copies of said document, the date of such destruction, and the name of the person who destroyed the document or ordered or authorized such destruction.

4.    If you claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested documents, furnish a list identifying each document for which the privilege or protection is claimed, together with the following information: date, sender, recipient, and persons to whom copies were furnished, together with their job titles, subject matter, basis on which the document is withheld, and the paragraph of the Request to which such document(s) responds.

5.    The use of the past or present tense herein shall be construed to make the Requests inclusive rather than exclusive.

6.    The use of singular or plural terms shall be construed to make the Requests inclusive rather than exclusive.

7.     The use of the disjunctive ("or") or the conjunctive ("and") shall be construed to make the Requests inclusive rather than exclusive.

8.     Each request herein for a document or documents, whether memoranda, reports, letters, minutes, or other documents of any description, requires the production of the document in its entirety, without redaction or expurgation.

9.     These requests for production of documents are continuing and require further and supplemental responses as provided in Rule 26 of the FEDERAL RULES OF CIVIL PROCEDURE.

10.     If there is any question or confusion as to the meaning of any part of these requests for production of documents, please promptly contact FMIC's counsel for an explanation.

## DOCUMENTS REQUESTED

Pursuant to Rule 45(a)(1)(D), please produce all documents requested below in their Native format along with bates stamped multi-page TIFF images and multi-page searchable text files associated with an Introspect (.idx) load file. The field requests for the load file are attached as Exhibit B.

Please produce the following documents in your possession, custody, or control:

1.     A complete copy of Your file(s) concerning, evidencing or relating to work performed by You on behalf of the Port at any Port property in the three years prior to Hurricane Katrina, including, but not limited to:

      a.     Contractor Files;

      b.     Subcontractor Files;

      c.     Architectural Files;

      d.     Engineering Files; and

      e.     Consultant Files.

2.     A complete copy of Your file(s) concerning, evidencing or relating to work performed by You on behalf of the Port at any Port property post-Hurricane Katrina, including, but not limited to:

      a.     Contractor Files;

      b.     Subcontractor Files;

      c.     Architectural Files;

      d.     Engineering Files; and

   e.  Consultant Files.

3.  A complete copy of Your file(s) concerning, evidencing or relating to inspections performed by You at any Port property in the three years prior to Hurricane Katrina, including, but not limited to:

   a.  Contractor Files;

   b.  Subcontractor Files;

   c.  Architectural Files;

   d.  Engineering Files; and

   e.  Consultant Files.

4.  A complete copy of Your file(s) concerning, evidencing or relating to inspections performed by You at any Port property post-Hurricane Katrina, including, but not limited to:

   a.  Contractor Files;

   b.  Subcontractor Files;

   c.  Architectural Files;

   d.  Engineering Files; and

   e.  Consultant Files.

5.  A complete copy of Your file(s) concerning, evidencing or relating to additions, alterations or repairs performed by You at any Port property in the three years prior to Hurricane Katrina, including, but not limited to:

   a.  Contractor Files;

   b.  Subcontractor Files;

   c.  Architectural Files;

   d.  Engineering Files; and

   e.  Consultant Files.

6.  A complete copy of Your file(s) concerning, evidencing or relating to additions, alterations or repairs performed by You at any Port property post-Hurricane Katrina, including, but not limited to:

   a.  Contractor Files;

      b.      Subcontractor Files;

      c.      Architectural Files;

      d.      Engineering Files; and

      e.      Consultant Files.

7.      Any documents concerning, evidencing or relating to any Port property in the three years prior to Hurricane Katrina, including, but not limited to,

      a.      Gary Bourg's complete file(s); and

      b.      David Grillot's complete file(s).

8.      Any documents concerning, evidencing or relating to any Port property post-Hurricane Katrina, including, but not limited to,

      a.      Gary Bourg's complete file(s); and

      b.      David Grillot's complete file(s).

9.      Any correspondence between You and the Port concerning, evidencing or relating to any building code in the three years prior to Hurricane Katrina.

10.      Any correspondence between You and the Port concerning, evidencing or relating to the IBC 2000 post-Hurricane Katrina.

11.      Any correspondence between You and the Port concerning, evidencing or relating to any Building Official in the three years prior to Hurricane Katrina.

12.      Any correspondence between You and the Port concerning, evidencing or relating to any Building Official post-Hurricane Katrina.

13.      Any correspondence between You and any Building Official related to additions, alterations or repairs at any Port property in the three years prior to Hurricane Katrina.

14.      Any correspondence between You and any Building Official related to additions, alterations or repairs at any Port property post-Hurricane Katrina.

15.      Any documents relating to, concerning or evidencing the application of any building code, including the IBC 2000, to any additions, alterations or repairs at any Port property in the three years prior to Hurricane Katrina, including, but not limited to, bids, specifications, architectural designs or engineer reports.

16.      Any documents relating to, concerning or evidencing the application of any building code, including the IBC 2000, to any additions, alterations or repairs at any Port property post-Hurricane Katrina, including, but not limited to, bids, specifications, architectural designs or engineer reports.

17.    Any correspondence between You and the Port, or any third-party, related to, concerning or evidencing the application of any building code, including the IBC 2000, to any additions, alterations or repairs at any Port property in the three years prior to Hurricane Katrina.

18.    Any correspondence between You and the Port, or any third-party, related to, concerning or evidencing the application of any building code, including the IBC 2000, to any additions, alterations or repairs at any Port property post-Hurricane Katrina.

19.    Any correspondence between You and the Port concerning, evidencing or relating to any additions, alterations or repairs at any Port property in the three years prior to Hurricane Katrina.

20.    Any correspondence between You and the Port concerning, evidencing or relating to any additions, alterations or repairs at any Port property post-Hurricane Katrina.

21.    Any documents, including, but not limited to, estimates, evaluations, analyses or reports that You prepared for the Port concerning, evidencing or relating to any additions, alterations or repairs at any Port property in the three years prior to Hurricane Katrina.

22.    Any documents, including, but not limited to, estimates, evaluations, analyses or reports that You prepared for the Port concerning, evidencing or relating to any additions, alterations or repairs at any Port property post-Hurricane Katrina.

23.    Any documents You relied on in Your estimates, evaluations, analyses or reports that You prepared for the Port concerning, evidencing or relating to any additions, alterations or repairs at any Port in the three years prior to Hurricane Katrina.

24.    Any documents You relied on in Your estimates, evaluations, analyses or reports that You prepared for the Port concerning, evidencing or relating to any additions, alterations or repairs at any Port property post-Hurricane Katrina.

25.    Any documents concerning, evidencing or relating to any additions, alterations or repairs at any Port property in the three years prior to Hurricane Katrina, including, but not limited to, bids, specifications, architectural designs or engineer reports.

26.    Any documents concerning, evidencing or relating to any additions, alterations or repairs at any Port property post-Hurricane Katrina, including, but not limited to, bids, specifications, architectural designs or engineer reports.

27.    Any documents, including, but not limited to, estimates, evaluations, analyses or reports that You prepared for the Port concerning, evidencing or relating to damage at any Port property in the three years prior to Hurricane Katrina.

28.    Any documents, including, but not limited to, estimates, evaluations, analyses or reports that You prepared for the Port concerning, evidencing or relating to damage at any Port property post-Hurricane Katrina.

29.     Any videos or photographs regarding or relating to damage at any Port property in the three years prior to Hurricane Katrina.

30.     Any videos or photographs regarding or relating to damage at any Port property post-Hurricane Katrina.

31.     Any documents concerning, evidencing or relating to the repair or replacement of overhead roll-up doors at any Port property in the three years prior to Hurricane Katrina.

32.     Any documents concerning, evidencing or relating to the repair or replacement of overhead roll-up doors at any Port property post-Hurricane Katrina.

33.     Any documents, including, but not limited to, estimates, evaluations, analyses or reports concerning, evidencing or relating to the "Portwide Overhead Roll-Up Door Repair/Replacement Project."

34.     Any documents that You relied on for Your estimates, evaluations, analyses or reports concerning, evidencing or relating to the "Portwide Overhead Roll-Up Door Repair/Replacement Project."

35.     Any correspondence between You and the Port concerning, evidencing or relating to the "Portwide Overhead Roll-Up Door Repair/Replacement Project."

36.     Any correspondence between You and any third-party concerning, evidencing or relating to the "Portwide Overhead Roll-Up Door Repair/Replacement Project."

37.     Any documents concerning, evidencing or relating to the Claim.

38.     Any correspondence between You and the Port concerning, evidencing or relating to the Claim.

39.     Any contracts between You and the Port from 2002 through the present.

**EXHIBIT B**

| UDF# | Field Name | Field Type | Field Description | Example of Field Description |
|---|---|---|---|---|
| 1001 | BEGBATES | Text | Bates Stamped Document | ex:  AA 000001 |
| 1002 | ENDBATES | Text | Bates Stamped Document | ex:  AA 000003 |
| 1007 | Family | Text | Attachment Range for Parent and children | AA |
| 10000 | DocID | Text | Unique number by DOCUMENT | |
| 10011 | DocExt | Text | File extension of native file | ex: DOC |
| 10013 | SourceApp | Text | Source application assigned to the native file | |
| 10014 | Filename | Text | Original filename of native file. Contains subject of e-mail message for e-mail records. | ex(1): Estimates.xls: ex(2): FW: Monday Meeting |
| 10016 | EDPages | Integer | Number of pages per electronic documents | ex: 7 |
| 10017 | MD5Hash | Text | Unique identifier, extracted from all files | ex: D564668821C34200FF3E32C9BFDCCC80 |
| 10020 | Path | Text | Folder path of where documents came from on server or CD | ex: jsmith/important |
| 10021 | Title | Text | Title field value extracted from the metadata of the native file | |
| 10023 | Author | Text | Author field value pulled from metadata of the native file. | |
| 10027 | Organization | Text | Company field extracted from metadata of native file. | |

**EXHIBIT B**

| UDF# | Field Name | Field Type | Field Description | Example of Field Description |
|---|---|---|---|---|
| 10029 | DateCreated | Datetime | Creation date of the native file. Needs to be in mm/dd/yyyy format. | ex: 12/20/2001 |
| 10030 | TimeCreated | Text | Creation time of the native file. | ex: 18:40:48 |
| 10031 | DateLastMod | Datetime | Date the native file was last modified. Needs to be in mm/dd/yyyy format. | ex: 12/20/2001 |
| 10032 | TimeLastMod | Text | Tim the native file was last modified. Needs to be in military format. | ex: 18:40:48 |
| 10035 | Related Messages | Text | Normalized subject of e-mails (NO FW OR RE) | ex: Monday Meeting |
| 10036 | E-Mail Thread | Large Text | E-mail thread identification. | ex: 01C72AC4CB0FC3953C5FA8E149389B522EFF595EF9FB |
| 10038 | EMail_Subject | Text | Subject of the e-mail message. | |
| 10039 | From | Text | Author of the e-mail message. | |
| 10040 | To | Large Text | Main recipient(s) of the e-mail message. | |
| 10041 | Cc | Large Text | Recipient(s) of "Carbon Copies) of the e-mail message. | |
| 10042 | Bcc | Large Text | Recipient(s) of "Blind Carbon Copies" of the e-mail message. | |
| 10043 | Attach Names | Large Text | Attachment to Emails | |

**PAGE 2**

EXHIBIT B

| UDF# | Field Name | Field Type | Field Description | Example of Field Description |
|------|-----------|-----------|------------------|----------------------------|
| 10046 | DateSent | Datetime | Sent date of an e-mail message. Needs to be in mm/dd/yyyy format. | |
| 10047 | TimeSent | Text | Sent time of an e-mail message. | |
| 10048 | DateRcvd | Datetime | Received date of an e-mail message. Needs to be in mm/dd/yyyy format. | |
| 10049 | TimeRcvd | Text | Received time of an e-mail message. | |
| 10050 | EntryID | Text | Unique identifier of e-mails in mail stores. | ex: 1322C3C03649D4418625711400748A13 |
| 10051 | InternetMsgID | Text | Internet Message ID assigned to an e-mail message by the outgoing mail server. | |
| 10052 | InReplyToID | Text | IntMsgID of the e-mail replied to. | |
| 10072 | PgCt | Integer | No of document per page | ex:  3 |
| 10078 | NumAttach | Integer | Number of attachments to an email | ex:  2 |
| 10082 | MailStore | Text | Name of email box | ex:  jsmith.pst |
| 10084 | Custodian | Text | Owner of email box | ex:  John Smith |
| 10085 | EDFolder | Text | Full path to source files (if e-docs or loose e-mail) or folder path contained with a mail store (if NSF or PST) | ex(1): Personal Folders\Inbox; ex(2): C:\EDOCS |
| 10087 | RecordType | Text | Type of electronically stored information | ex:  E-Mail; ex:  Attach; ex:  E-Doc |

PAGE 3

2081911\1

EXHIBIT "C"



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS<br><br>Plaintiff,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY, AND FACTORY MUTUAL INSURANCE COMPANY,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 06-8101<br><br>JUDGE DONALD E. WALTER<br><br>MAGISTRATE ALMA L. CHASEZ |

**BUILDING CONSULTING ASSOCIATES, INC.; CHELSEA PLACE DESIGN, INC. D/B/A CHELSEA ARCHITECTS or CHELSEA DESIGN INVESTIGATIONS; CONSTRUCTION ANALYSIS, INC.; CRENSHAW CONSULTING GROUP, LP; ENGINEERING, DESIGN & TESTING CORP.; FISK ELECTRIC COMPANY; GILBANE CAT RESPONSE; HAGEN, STREIFF, NEWTON & OSHIRO; MCDONALD-MEHTA ENGINEERS, LLP; SOLIS PARKER & ASSOC.; SUNCORP VALUATIONS, INC.; UNITED SALVAGE; URBAN ENGINEERS, INC.; and ROBERT L. WRIGHT & ASSOCIATES, INC.'S**
**OBJECTIONS TO SUBPOENAS DUCES TECUM**

To: Plaintiff, Board of Commissioners of the Port of New Orleans, by and through its attorney Susan Guidry, Of Counsel at William W. Hall & Associates at P.O. Box 60046, 1350 Port of New Orleans Place, New Orleans, Louisiana 70160.

Building Consulting Associates, Inc.; Chelsea Place Design, Inc. (d/b/a Chelsea Architects or Chelsea Design Investigations); Construction Analysis, Inc.; Crenshaw Consulting Group, LP; Engineering, Design & Testing Corp.; Fisk Electric Company; Gilbane CAT Response; Hagen, Streiff, Newton & Oshiro; McDonald-Mehta Engineers, LLP; Solis Parker & Assoc.; Suncorp Valuations, Inc.; United Salvage; Urban Engineers, Inc.; and Robert L. Wright & Associates, Inc. (hereinafter collectively referred to as "the Entities") serves their Objections in the above styled and numbered cause to Plaintiff, Board of Commissioners of the Port of New Orleans' (hereinafter the "Port") subpoenas served on the Entities on or about April 15, 2008, through April 25, 2008 pursuant to Federal Rule of Civil Procedure 45(c)(2)(b).

---

**Objection No. 1:**    The Entities object to the manner of service on the Entities because the subpoenas were improperly served by DHL courier service.  The Rules require service to be issued by a person at least 18 years old.  FED. R. CIV. P. 45(b)(1).  It is unknown whether the subpoenas were served by a person at least 18 years old and thus, they are deficient.

In the case of Building Consulting Associates, Inc. (hereinafter "BCA"), the subpoena was served on one Stanley J. Nieminski, an independent accountant who is not an agent, employee or representative of BCA.  Thus, BCA has not been served.

**Objection No. 2:**    Factory Mutual Insurance Company (hereinafter "FMIC") has already produced the Entities files regarding or in relation to the Port.  The documents have been produced electronically in native format and in scanned hard copy.  A person responding to a document request need not produce the same electronically stored information in more than one form.  FED. R. CIV. P. 45(d)(1)(C).  Here, FMIC has already produced the electronically stored data in two forms and the Entities object to being subpoenaed to produce the files for a third time.

**Objection No. 3:**    The subpoenas do not allow a reasonable time for compliance.  FED. R. CIV. P. 45(c)(3)(A)(I); *Kupritz v. Savannah College of Art & Design*, 155 F.R.D. 84, 88 (E.D. Pa. 1994).  These subpoenas require the gathering and labeling of thousands of documents and compliance by May 12, 2008 (or in some cases May 15, 2008 or May 19, 2008) is not feasible for the Entities which are actively conducting business and not a party to this lawsuit.

**Objection No. 4:**    The subpoenas subject the Entities to an undue burden.  FED. R. CIV. P. 45(c)(3)(A)(iv); *Linder v. Nat'l Sec. Agency*, 94 F.3d 693, 695 (D.C. Cir. 1996).  In the subpoenas the Port requests thousands of documents to be produced in native format and by scanned hard copy.  In addition, the Port requests that each of the thousands of documents be individually hand notated to include the physical location of the document (approximately 38

different fields according to the Port's subpoenas) on the producing parties' computer files.  To comply would cost the Entities undue time, expense, burden and hardship.  Furthermore, there is not any benefit to the Port in having each field inserted on the hard copies of the documents since the Port also has the documents in native format.

**Objection No. 5:**    The subpoenas require production of electronically stored information from sources that are not reasonably accessible because of undue burden and cost.  FED. R. CIV. P. 45(d)(1)(D).  Specifically, the Entities' advertisements and brochures.

**Objection No. 6:**    The production of the  Entities' advertisements and brochures are not relevant to the Port's causes of action against FMIC.  *See* FED. R. EVID. 402; LA. CODE EVID. ANN. art. 402.

**Objection No. 7:**    The production of the Entities' advertisements and brochures requires the disclosure of the Entities' trade secrets and other confidential information regarding their very competitive businesses.  A subpoena may be modified or quashed to protect a person subject to or affected by the subpoena if the subpoena requires disclosure of a trade secret or other confidential information.  FED. R. CIV. P. 45(c)(3)(B).

Respectfully submitted,

Charles B. Mitchell, Jr.
Texas Bar No.:   14207000
Federal I.D. No.:  16627
Brooke Ulrickson
Texas Bar No.:  24035988
BROWN, DEAN, WISEMAN, PROCTOR, HART & HOWELL, L.L.P.
306 West 7th Street, Suite 200
Fort Worth, Texas 76102-4905
Telephone:     (817) 332-1391
Facsimile:      (817) 870-2427

and

Robert L. Redfearn, Jr.
Louisiana Bar No: 17106
SIMON, PERAGINE, SMITH & REDFEARN, LLP
1100 Poydras Street, 30th Floor
New Orleans, Louisiana  70163-3000
Telephone:  (504) 569-2030
Facsimile: (504) 569-2999

### Certificate of Service

I certify that a copy of this Objection to Subpoenas Duces Tecum was served on the following counsel of record by on the 29th day of April, 2008:

| | |
|---|---|
| Gerald O'Brien Gussoni, Jr. | *Via Electronic mail & US Mail* |
| Jeffery M. Lynch | |
| Francine Weaker | |
| Joseph W. Fritz, Jr. | |
| Board of Commissioners of the Port of New Orleans | |
| 1350 Port of New Orleans Place | |
| P.O. Box 60046 | |
| New Orleans, LA 70160 | |
| **gussonib@portno.com** | |
| **lynchj@portno.com** | |
| **weakerf@portno.com** | |
| **fritzj@portno.com** | |
| | |
| William W. Hall | *Via Electronic mail & US Mail* |
| William W. Hall & Associates | |
| 3500 N. Hullen Street | |
| Metairie, LA 70002 | |
| **wmwhall@bellsouth.net** | |
| | |
| Susan G. Guidry, Of Counsel | *Via Electronic mail & CMRRR* |
| William W. Hall & Associates | |
| 963 Wilson Drive | |
| New Orleans, LA 70019 | |
| **sgguidry@cox.net** | |

William F. Merlin, Jr.                        *Via Electronic mail & US Mail*
Merlin Law Group, PA
777 S. Harbour Island Blvd.
Suite 950
Tampa, FL 33602
**wmerlin@merlinlawgroup.com**

Deborah R. Trotter                            *Via Electronic mail & US Mail*
Merlin Law Group, PA
718 Dunbar Ave, Suite 1A
Bay St. Louis, MS 39520
**dtrotter@merlinlawgroup.com**

Jerry Gette                                    *Via Electronic mail & US Mail*
R. Tate Gorman
Shannon M. O'Malley
Zelle, Hofmann, Voelbel, Mason & Gette, L.L.P.
1201 Main Street, Suite 3000
Dallas, Texas 75202
**tgorman@zelle.com**
**jgette@zelle.com**
**somalley@zelle.com**

Charles B. Mitchell, Jr./ Brooke Ulrickson

EXHIBIT "D"

AFFIDAVIT

Before me, undersigned notary, came and appeared,

SUSAN G. GUIDRY

Who, after being duly sworn, did depose and state:

1. Affiant is outside counsel for the Board of Commissioners for the Port of New Orleans ("the Port") in its litigation against Factory Mutual Insurance Company ("FMIC"), Civil Action No. 06-8101, pending in the United States District Court for the Eastern District of Louisiana. As such, affiant states the following of her personal knowledge.

2. Affiant has reviewed the Port's Opposition to Motion to Quash Non-Party Subpoena filed by Urban Engineering, Inc. The allegations made therein are true and correct to the best of affiant's knowledge, information and belief.

_____
SUSAN G. GUIDRY

SWORN TO AND SUBSCRIBED BEFORE ME,
NOTARY, THIS _____ DAY OF _____, 2008

_____
NOTARY

My commission expires _____

, JOSEPH W. FRITZ, JR.
NOTARY PUBLIC
Bar # 5755
Parish of Jefferson, State of Louisiana
My Commission is issued for life

1

EXHIBIT "E"

## WILLIAM W. HALL & ASSOCIATES

### ATTORNEYS AT LAW
### 3500 N. HULLEN STREET
### METAIRIE, LOUISIANA 70002

#### (504) 456-8692
#### TELECOPIER (504) 456-8624

May 1, 2008

VIA EMAIL ONLY (cmitchell@browndean.com)

Mr. Charles B. Mitchell, Jr.
BROWN, DEAN, WISEMAN,
PROCTOR, HART & HOWELL, L.L.P.
306 West 7th St., Ste. 200
Fort Worth, TX 76102

     *Re:*   *Board of Commissioners of the Port of New Orleans v. Lexington Insurance*
         *Company, and Factory Mutual Insurance Company*
         *USDC, ED La, C.A. No. 06-8101*

Dear Mr. Mitchell:

The Objections to Subpoenas Duces Tecum on behalf of Building Consulting Associates, Inc.; Chelsea Place Design, Inc. D/B/A Chelsea Architects or Chelsea Design investigations; Construction Analysis, Inc.; Crenshaw Consulting Group, LP; Engineering, Design & Testing Corp.; Fisk Electric Company; Gilbane CAT Response; Hagen, Streiff, Newton, & Oshiro; McDonald-Mehta Engineers, LLP; Solis Parker & Assoc.; Suncorp Valuations, Inc.; United Salvage; Urban Engineers, Inc.; and Robert L. Wright & Associates, Inc. (hereinafter referred to as "Entity" individually or "Entities") was served on our client on April 29, 2008. This letter is in response to those objections on behalf of the Board of Commissioners of the Port of New Orleans ("Port"), and addresses each objection in order.

**General Response 1**: The objections are untimely as to Crenshaw Consulting Group, LP; Construction Analysis, Inc.; and Urban Engineers, Inc. These three particular Entities were all served on April 14, 2008. (Please see attached copies of affidavits of service.) The Federal Rules of Civil Procedure require that objections to subpoenas duces tecum be served on the party or attorney designated in the subpoena before the earlier of fourteen days after the subpoena is served or the date specified for compliance. See Fed. R. Civ. Pro. 45(c)(2)(B). Thus, the objections are untimely and inapplicable to the subpoenas served on Crenshaw Consulting Group, LP; Construction Analysis, Inc.; and Urban Engineers, Inc.

**General Response 2**: The objections are premature as to Hagen, Streiff, Newton, & Oshiro; and United Salvage Associates, Inc. because these particular Entities had not yet been served with the subpoenas at the time the objections were served. Therefore, the objections are premature as to these particular Entities.

Mr. Charles B. Mitchell, Jr.
May 1, 2008
Page 2

**Response to Objection No. 1**:  With regard to the Entities that have been served with a subpoena, each was served by a professional process server who is over the age of eighteen. (Please see attached copies of affidavits or declarations of service.)  Thus, the service of the subpoena to each of these Entities was made in compliance with Fed. R. Civ. P. 45(b)(1).

In response to part two of Objection No. 1, I have attached a copy of the Illinois Secretary of State Corporations File Detail Report for Building Consulting Associates, Inc.  In this report, Stanley J. Nieminski, 6756 N. Harlem Ave., Chicago, IL 60631 is listed as the registered agent for Building Consulting Associates, Inc.  Thus, the Port has served the subpoena on an agent of this Entity, and has complied with Fed. R. Civ. P. 45(b).

The Port may later respond further to Objection No. 1.  The Port does not waive its additional responses to Objection No. 1, and reserves all rights to make those responses at a later date.

**Response to Objection No. 2**:  The Port is not clear as to what Factory Mutual Insurance Company ("FMIC") has and has not produced with regard to the Entities' data.  However, clearly the data produced by FMIC was not produced in response to the subpoenas, as the subpoenas had not been issued at the time FMIC made these productions.

The Port is not requesting that the Entities produce electronically stored information ("ESI") in more than one form.  FMIC and the Port have been in agreement for some time that each party would request of its consultants that the consultants produce in response to a subpoena a copy of electronic data in native format and that the parties would take it from there.  FMIC and the Port have agreed that all electronic data will be produced in native and TIFF, but that the parties would prepare the TIFF images.  If FMIC did not inform the Entities of this and does not intend to do this, the Port will accept the native data from the consultants and create the TIFFs.  The data can be produced to the IKON office listed in the subpoena, and IKON will take it from there.

The Port may later respond further to Objection No. 2.  The Port does not waive its additional responses to Objection No. 2, and reserves all rights to make those responses at a later date.

**Response to Objection No. 3**:  The Port believes that the subpoenas served on these Entities allow a reasonable time for compliance in accordance with Fed. R. Civ. Pro. 45(c)(3)(A)(i).  The subpoenas to these Entities are limited in scope with regard to the documents requested, and subject to this limitation, the subpoenas supply a reasonable time for compliance with the requests for documents.  Nevertheless, the Port is amenable to an extension of the time for compliance.

The Port may later respond further to Objection No. 3.  The Port does not waive its additional responses to Objection No. 3, and reserves all rights to make those responses at a later date.

Mr. Charles B. Mitchell, Jr.
May 1, 2008
Page 3

**Response to Objection No. 4**:  The Port does not agree that the subpoenas subject the Entities to an undue burden.  See response to objection no. 2, above.  The Port has not requested that any fielded information be "hand notated" for electronic documents.  All metadata requested related to the electronically stored documents requested by the Port can be easily captured in a fully automated manner in a matter of minutes using any number of relatively inexpensive and commonly available tools.  Like the electronic files, most of the fielded information requested for scanned paper documents can be derived from a fully automated process. The Port has requested that the Entities make accommodations during the scanning process for the entry of two basic bibliographic fields when they exist - "Box Number" and "Folder Tab Label".  Nearly all modern scanning tools permit these fields to be entered only once by the scanning technician for multiple documents contained in the same box or folder. The Entities' hard documents can be brought to IKON for scanning in the manner requested.

The Port may later respond further to Objection No. 4.  The Port does not waive its additional responses to Objection No. 4, and reserves all rights to make those responses at a later date.

**Response to Objection No. 5**:  The Port responds to this objection by requesting clarification of Entities' objection as to why production of advertisements and brochures are not reasonably accessible.  The Port asserts that Entities' advertisements and brochures are reasonably accessible by Entities, and production of those advertisements and brochures does not subject them to undue burden and cost.  This information is voluntarily provided to the public and potential customers without undue burden and cost to the Entities.

If Entities include in this objection requests for production other than advertisements and brochures, the Port requests that Entities further clarify this objection.

The Port may later respond further to Objection No. 5.  The Port does not waive its additional responses to Objection No. 5, and reserves all rights to make those responses at a later date.

**Response to Objection No. 6**:  The Port responds that the Entities' advertisements and brochures are relevant to the Port's causes of action against FMIC.

The Port may later respond further to Objection No. 6.  The Port does not waive its additional responses to Objection No. 6, and reserves all rights to make those responses at a later date.

**Response to Objection No. 7**:  The Port responds that production of the Entities' advertisements and brochures does not require disclosure of the Entities' trade secrets and other confidential information.  This information is voluntarily provided to the public and potential customers.  Further, the production requested is limited in scope in that it only requests such advertisements and brochures that the Entities make available to the public and its current and potential customers.  The Port further requests clarification as to why this requested

Mr. Charles B. Mitchell, Jr.
May 1, 2008
Page 4

documentation would require such disclosure as noted in the Objections to Subpoenas Duces Tecum.

The Port may later respond further to Objection No. 7. The Port does not waive its additional responses to Objection No. 7, and reserves all rights to make those responses at a later date.

During the course of my preparing this letter, I received numerous motions to quash filed on behalf of the Entities. It was my understanding when we spoke yesterday that we would attempt to amicably resolve the matter, or at least to limit the issues to the extent possible. If the Entities truly are concerned about the burden involved in responding to the subpoena, I would think that they also would be keenly interested in resolving the matter without undue litigation time and expense. To that end, I ask that you respond to the Port's requests for clarification and with any further questions or discussion that may assist in resolving the matter.

With kind regards, I remain

Sincerely,

Susan G. Guidry
Of Counsel

Enclosures

cc <u>Via Email Only</u>:

Gerald O. Gussoni, Jr.
William W. Hall
Deborah R. Trotter
Mary E. Kestenbaum
William F. Merlin, Jr.
Randy Santa Cruz
Shannon M. O'Malley
H. Jerome Gette
Thomas H. Cook, Jr.
James W. Holbrook, III
R. Tate Gorman

EXHIBIT "F"

## ZELLE, HOFMANN, VOELBEL, MASON & GETTE
### REGISTERED LIMITED LIABILITY PARTNERSHIP

BOSTON
DALLAS
MINNEAPOLIS
SAN FRANCISCO
WASHINGTON, D.C.
BEIJING*
SHANGHAI*
*In association with ZY & Partners

1201 MAIN STREET
SUITE 3000
DALLAS, TEXAS 75202
214-742-3000 TELEPHONE
214-760-8994 FACSIMILE
www.zelle.com

R. Tate Gorman
tgorman@zelle.com
214-749-4231

April 11, 2008

Susan G. Guidry
**PORT OF NEW ORLEANS**
P.O. Box 60046
New Orleans, LA 70160

***Via First Class Mail***

RE:   *Board of Commissioners of The Port of New Orleans v. Lexington Insurance Company and Factory Mutual Insurance Company*; Civil Action No. 06-8101, Section "K"(5); United States District Court, Eastern District of Louisiana
Our File No.:  2-001-0622

Dear Susan:

Enclosed please find nine discs and one portable hard drive containing FMIC's production of the following consultants' material:

1.    Building Consulting Associates, Inc. (FMCN_BCA 000001 through 000012);

2.    Crenshaw Consulting Group, LP (FMCN_CCG 000001 through 019444);

3.    Engineering Design & Testing Corp. (FMCN_EDT 00475 through 00703) (supplemental production);

4.    Fisk Electric Co. (FMCN_FEC 000001 through 001227);

5.    McDonald-Mehta Engineers, LLP (FMCN_MME 000001 through 000045);

6.    Robert L. Wright & Associates, Inc. (FMCN_RLW 000001 through 000524);

7.    Solis Parker & Associates, Inc. (FMCN_SPA 000001 through 000062);

8.    Suncorp Valuations, Inc. (FMCN_SVI 000001 through 002466); and

9.    Urban Engineers, Inc. (FMCN_UEI 000001 through 001472).

Should you have any questions, please do not hesitate to contact me.

Best regards,

Susan G. Guidry
April 11, 2008
Page 2

_____

Sincerely,

ZELLE, HOFMANN, VOELBEL, MASON & GETTE, L.L.P.

R. Tate Gorman

:alw
Enclosures

cc:  Joseph P. Guichet                    *Via First Class Mail*
     Ralph S. Hubbard, III
     **LUGENBUHL, WHEATON, PECK, RANKIN& HUBBARD**
     601 Poydras Street, Suite 2775
     New Orleans, LA  70130
     *(w/ enclosures)*

     Deborah R. Trotter               *Via E-mail: dtrotter@merlinlawgroup.com*
     *(w/o enclosures)*

     William W. Hall                  *Via E-mail: wmwhall@bellsouth.net*
     *(w/o enclosures)*

     William F. Merlin, Jr.           *Via E-mail: cmerlin@merlinlawgroup.com*
     *(w/o enclosures)*

     Gerald O. Gussoni, Jr.           *Via E-mail:  gussonib@portno.com*
     *(w/o enclosures)*

     H. Jerome Gette (Firm)

     James Holbrook (Firm)

     Shannon M. O'Malley (Firm)

     Thomas H. Cook, Jr. (Firm)

2084522v1

EXHIBIT "G"

WILLIAM W. HALL & ASSOCIATES

ATTORNEYS AT LAW
3500 N. HULLEN STREET
METAIRIE, LOUISIANA 70002

(504) 456-8692
TELECOPIER (504) 456 8624

April 18, 2008

<u>VIA DHL overnight delivery</u>

Mr. Patrick Anderson
BUILDING CONSULTING ASSOCIATES, INC.
6232 N. Northwest Highway
Chicago, IL 60631

RE:     Board of Commissioners of the Port of New Orleans
        v. Lexington Insurance Company, *et al.*
        USDC No. 06-8101, Section K, Mag. (5)

Dear Mr. Anderson:

     Enclosed for your convenience is a copy of a subpoena that has been issued and will be served on Building Consulting Associates, Inc.

     With kind regards, I am

                          Sincerely,

                          Susan G. Guidry
                          Of Counsel

SGG/tlf
Enclosure

cc via email only:
Mr. Joseph P. Guichet jguichet@lawla.com
Mr. H. Jerome Gette jgette@zelle.com



EXHIBIT "H"



SERVICES    PROGRAMS    PRESS    PUBLICATIONS    DEPARTMENTS    CONTACT

## CORPORATION FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| **Entity Name** | BUILDING CONSULTING ASSOCIATES, INC. | **File Number** | 61953515 |
| **Status** | GOODSTANDING | | |
| **Entity Type** | CORPORATION | **Type of Corp** | DOMESTIC BCA |
| **Incorporation Date (Domestic)** | 01/07/2002 | **State** | ILLINOIS |
| **Agent Name** | STANLEY J. NIEMINSKI | **Agent Change Date** | 01/07/2002 |
| **Agent Street Address** | 6756 N HARLEM AVE. | **President Name & Address** | VICTOR A BAVARO 6232 N NORTHWEST HIGHWAY CHICAGO IL 60631 |
| **Agent City** | CHICAGO | **Secretary Name & Address** | SAME |
| **Agent Zip** | 60631 | **Duration Date** | PERPETUAL |
| **Annual Report Filing Date** | 12/05/2007 | **For Year** | 2008 |

**Return to the Search Screen**

**Purchase Certificate of Good Standing**

**(One Certificate per Transaction)**

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

EXHIBIT "I"

AFFIDAVIT

Before me, undersigned notary, came and appeared,

DWIGHT DUKE ALDEN

Who, after being duly sworn, did depose and state:

1. Affiant is a Manager for Huron Consulting Group, a management consulting firm, retained by the Board of Commissioners for the Port of New Orleans ("the Port"). As such, affiant states the following of his personal knowledge.

2. Affiant has advised the Port in matters of document management and production.

3. Exhibit "B" to the subpoena, entitled "Port of New Orleans Form of Production for Subpoena Responses," only requests production of electronically stored information in native format and computer-generated TIFF images. The Port requested electronic documents in native format so that it could view the original documents in such a way that would allow review of hidden fields and formulas, especially in spreadsheets. TIFF Images of electronic documents will allow all parties to review and reference the produced documents in a uniform manner during depositions and trial. The requested format for production does not require the controller of the documents to print electronic documents and have them rescanned.

4. Paper documents that are to be produced as scanned TIFF Images may be converted into that form at a cost and rate of production comparable to the cost and time necessary to make paper photocopies of the same documents.

5. The request that "Box Numbers" and "Folder Tab Label" be included will allow the Port to virtually recreate folders and documents as they exist in the filing system of the controller of the documents. These fields can be easily captured during the scanning process by the scanning technician by entering these fields into the scanning machine. Nearly all modern scanning software tools permit the scanning technician to enter these fields only once for an entire box or folder of documents.

6. The requested production can and should be done using an entirely automated process, which does not require hand notation of any kind. These production steps are now very common and can be executed by any one of countless vendors at costs comparable to the more inefficient paper production method.

1

7. The form of production requested in the subpoena is the same form of production that FMIC has agreed for the Port to use in production of its documents. Further, affiant has reviewed the

form of production that FMIC has requested from the Port and, by subpoena, from the Port's consultants, and FMIC's requested form of production is very similar.

_____
DWIGHT DUKE ALDEN

SWORN TO AND SUBSCRIBED BEFORE ME, NOTARY, THIS ____ DAY OF _May_____, 2008

_____
NOTARY

My commission expires __4/8/2010_____.

```
OFFICIAL SEAL
JANET Z HERNANDEZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/08/10
```

2